1
2
3
4
5
6                          UNITED STATES DISTRICT COURT
7                               DISTRICT OF NEVADA
8                                    * * * * *
9   PROTECTION TECHNOLOGIES, Inc.
10          Plaintiff,                              3:17-cv-00144-LRH-WGC
11      v.
12  KENNETH RIBLER,                                 <u>ORDER</u>
13          Defendant.
14

15          Before the court is plaintiff Protection Technologies, Inc.'s ("Protech") application for a

16  temporary restraining order and order to show cause as to why a preliminary injunction should

17  not be issued. ECF No. 04. The application also moves the court to order expedited discovery.

18  Protech has filed a verified complaint (ECF No. 1) and served Ribler with a copy of the instant

19  application.

20  I.      Background

21          This action involves an alleged misappropriation of trade secrets. Protech is a Nevada

22  corporation[1] based in Sparks, Nevada, which employed defendant Kenneth Ribler as a regional

23  sales manager until his termination on February 16, 2017. ECF No. 1 ¶ 1–2, 7. Protech alleges

24  that Ribler, during the early morning hours of the following day, exported Protech's

25  "confidential, proprietary, and trade secret documents and information" from its customer-

26  management system. *Id*. at ¶ 26. Ribler allegedly downloaded the information to a private drive

27  ─────────────────
    [1] Protech is "engaged in the business, inter alia, of marketing, distributing, and selling supplies,
28  equipment and other services related to security for its customers' property and premises." ECF
    No. 1 at ¶ 7.

and emailed the information from his company email account to himself—presumably to his personal email account. *Id.* at ¶ 14, 26–27. Protech also claims that Ribler deleted the emails from his company account, asserting that he was attempting to conceal his conduct. *Id.* at ¶ 26.

Protech alleges that, in his position as regional sales manager, Ribler "had access to substantial confidential Protech information related to [its] customers, products, margins, profit percentages and markets, and the products [its] customers purchased." *Id.* at ¶ 15. During his employment, Ribler "helped Protech generate, develop, compile and analyze, substantial information concerning each customer, including their product preferences, buying patterns, credit profiles, customer invoices and pricing, customer practices, margins and profit variances, and the exact amount and type of business transactions with each customer." *Id.* at ¶ 16. Protech alleges this was the information that Ribler misappropriated on February 17, 2017, and that the data "is confidential Protech data and information, not available to competitors and others, and constitutes [its] trade secrets." *Id.* at ¶ 18. It further asserts that "[a] competitor who had access to this data and analysis would have an unfair competitive advantage that could enable them, for example, to use Protech's own data and analysis, to underprice [its] price quotations, and to better service and divert customers." *Id.* at ¶ 21.

Additionally, Protech alleges that it took "significant steps to protect its confidential and proprietary information[,] including requiring that employees sign confidentially and nondisclosure agreements and by only enabling its employees to gain access to the data through password-protected entry points. *Id.* at ¶ 22–23, 48. Ribler was subject to the company's confidentiality agreement. *Id.* at ¶ 12–13, 48.

Protech filed suit on March 7, 2017, alleging violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and Nevada's codification of the Uniform Trade Secrets Act ("UTSA"), NRS 600A.010 *et seq.*, as well as other Nevada common-law claims.

## II.   Discussion

### A.   Temporary restraining order

Protech requests that the court issue an order enjoining Ribler from "destroying documents and other evidence; exploiting or disclosing Protech's trade secret and other

1    confidential information; violating his confidentiality obligations to Protech; or soliciting
2    business from Protech's customers whose accounts he had access to while at Protech and whose
3    information he downloaded immediately after he was terminated from Protech." ECF No. 4 at
4    10.
5          Under Federal Rule of Civil Procedure 65(b), a court may issue a temporary restraining
6    order ("TRO"). In order to grant the TRO, the plaintiff must show that (1) irreparable harm will
7    likely occur to the plaintiff absent an injunction, (2) the balance of equities favors the plaintiff,
8    (3) an injunction is in the public's interest, and (4) the plaintiff is likely to succeed on the merits.
9    *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). The
10   court finds that Protech has satisfied its burden and will therefore issue a TRO, set a hearing on a
11   preliminary injunction, and request related briefing.
12         Protech argues that it will suffer irreparable harm if, absent an injunction, Ribler was to
13   disclose the data he allegedly misappropriated from Protech to one of the company's
14   competitors. ECF No. 4 at 10. It argues that this will grant a competitor an unfair advantage and
15   ultimately lead to a loss of customers and revenue. *Id*. The court agrees and finds that the act of
16   downloading company data immediately after termination, especially when coupled with
17   attempts to hide these acts, indicates an intent to use this data against the company's interests.
18         Further, Protech has established that it is likely to succeed on the merits of its DTSA and
19   Nevada Trade Secrets Act claims. Both statutes create causes of action for the misappropriation
20   of trade secrets when the owner of the information took reasonable measures to secure that
21   information. At this stage, the court is satisfied that the customer data that Ribler allegedly
22   downloaded constitutes a trade secret. *See* 18 U.S.C. § 1839(2) (defining a trade secret as "all
23   forms and types of financial, business . . . information, including patterns, plans, compilations, ...
24   methods, techniques, processes . . . if . . . the information derives independent economic value,
25   actual or potential, from not being generally known to, and not being readily ascertainable
26   through proper means by, another person who can obtain economic value from the disclosure or
27   use of the information"); Nev. Rev. Stat. § 600A.030(5) (defining trade secret similarly); *MAI*
28   *Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (holding that a company's

customer database was a trade secret under California's codification of the UTCA). Moreover, the court finds that Protech took reasonable measures to keep this information secure by requiring employees to sign confidentiality agreements and limiting access to the data to password-protected entry points. *See MAI Sys.*, 991 F.2d at 521.

Finally, the court finds that the final two prongs are met. The balance of equities is in favor of Protech because the TRO will not feasibly harm any of Ribler's interests, and there is a strong public interest in protecting trade secrets, as evidenced by the existence of the DTSA and UTSA. The court will therefore grant Protech's TRO application.

Because this TRO will not harm Ribler's interests, the court finds that it is not necessary to require Protech to post a bond.

### B.   Expedited discovery

Protech requests that the court order expedited discovery by allowing "it to arrange for a forensics e-discovery expert, to create a 'clone' or mirror image of Ribler's personal email accounts, as well as his electronic devices such as his tablet, mobile phone, any other computer drive, both local or stored in an offsite server (e.g, the 'cloud') which are in Ribler's possession or custody, or subject to [his] control, that was used to access or store, even temporarily, Protech's confidential, proprietary, or trade secret information." ECF No. 4 at 24. Protech argues that, absent this discovery, Ribler will be able to further delete evidence of his misappropriation.

The court finds that this requested expedited discovery is extensive and, considering the limited duration of a TRO, is not appropriate at this stage of proceedings. Moreover, the purpose of issuing the TRO is in part to prevent the type of evidence destruction that Protech fears. The court will therefore reserve this issue until the preliminary-injunction hearing.

### III.   Conclusion

IT IS THEREFORE ORDERED that plaintiff Protection Technologies, Inc.'s application for a temporary restraining order (ECF No. 4) is **GRANTED**.

IT IS FURTHER ORDERED that defendant Kenneth Ribler is **TEMPORARILY RESTRAINED** from exploiting or disclosing any data or information he may have taken from Protection Technologies. Ribler may not destroy or tamper with any of this data or any evidence

that he downloaded, emailed, or otherwise transmitted the data to himself or other parties. Ribler may not solicit business from Protech's customers or assist another person or entity in soliciting such business.

IT IS FURTHER ORDERED that Protection Technologies' request for expedited discovery is **DENIED**.

IT IS FURTHER ORDERED that the court will hold a hearing on whether to issue a preliminary injunction on **Wednesday, March 22, 2017**, at **2:00 P.M**. in Courtroom 3 at the Bruce R. Thompson courthouse in Reno, Nevada. If the parties have any questions concerning the hearing, the parties may contact the courtroom deputy, Dionna Negrete, at (775) 686-5829 no later than **Tuesday, March 21, 2017**.

IT IS FURTHER ORDERED that Ribler may submit a brief showing cause as to why the court should not issue a preliminary injunction by **March 16, 2017**. Protection Technologies may file a response by **12:00 P.M.** on **March 20, 2017**.

IT IS FURTHER ORDERED that Protection Technologies shall serve Ribler with a copy of this order by **March 9, 2017**.

IT IS SO ORDERED.

DATED this 8th day of March, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE